UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
00 MAR 31 PM 1:59
N.D. OF ALABAMA

WILBON PATTON, III,       )
                          )
    Plaintiff,            )
                          )
vs.                       )    CV 99-BU-1656-S
                          )
HOUSING AUTHORITY OF THE  )                ENTERED
BIRMINGHAM DISTRICT,      )
                          )                MAR 31 2000
    Defendant.            )

## MEMORANDUM OPINION

This case is presently pending before this Court on Defendant's Motion for Summary Judgment. (Doc. 19) Plaintiff Wilbon Patton, III, sued Defendant Housing Authority of the Birmingham District ["HABD"] alleging that HABD discriminated against him on the basis of his race and gender and that it retaliated against him for engaging in protected activity. Defendant moves for summary judgment on the following grounds: (1) Plaintiff cannot establish a prima facie case of race or gender discrimination because he has not identified similarly situated white and/or female employees that were treated more favorably; (2) Plaintiff cannot show that the articulated reason for his discipline/termination was a pretext for discrimination; (3) Plaintiff cannot show that he engaged in protected activity; (4) Plaintiff cannot show a causal link between the filing of his EEOC charge and his termination; and (5) Plaintiff cannot show that the reason for his termination was a pretext for retaliation. Defendant has also filed a Motion to Strike affidavits submitted by Plaintiff, as well as Plaintiff's evidentiary submission.

This Court has reviewed the record and submissions of the parties and now determines that Defendant's Motion to Strike Affidavits submitted by Plaintiff is due to be granted; its Motion to Strike Plaintiff's Evidentiary Submission is due to be denied. Defendant's Motion for Summary Judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an opportunity to test the mettle of their case before trial. On a motion for summary judgment, this Court must assess the entire record in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is appropriate only if the Court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying evidence in the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party's burden is not meager; it must illuminate for the Court the reasons why the non-moving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Clark*, 929 F.2d at 608. The moving party's burden was set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough to simply state that the non-moving party cannot meet its burden at trial.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54).[1] In other words, the moving party must demonstrate that its motion is due to be granted before the burden shifts to the non-moving party to demonstrate an issue for trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court

---

[1] The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes* [*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)] rule for [an] **uncommon** situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608 (emphasis added). In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607.

a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the Court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The Court, however, must not weigh conflicting evidence for probity or make credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. The court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993)(citations omitted). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *EPL, Inc. v. USA Federal Credit Union*, 173 F.3d 1356, 1360 (11th Cir. 1999)(quoting *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1369 (11th Cir. 1982). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## II. STATEMENT OF UNDISPUTED FACTS

Plaintiff failed to file a brief in opposition to Defendant's Motion for Summary Judgment; specifically, he failed to dispute the Defendant's Statement of Fact as required by this Court's Appendix A. Therefore, to extent Defendant's Statement of Facts are supported by the record, the Court deems them to be admitted by Plaintiff.

Plaintiff began his employment with Defendant on or about June 2, 1994. Defendant promoted him to Housing Manager of the Cooper Green housing community in September 1996.

On August 21, 1997, a resident of the Cooper Green Housing community accused Plaintiff of sexually harassing her. Plaintiff's supervisor, Patricia Sumpter, her immediate supervisor, Jimmie Lacey, told Plaintiff about the accusation. They also told Plaintiff that they were going to investigate the matter and that Plaintiff was not to take any action in retaliation against the resident. Thereafter, Plaintiff filed a police incident report against the resident, naming her as a suspect and Defendant as the victim. a copy of this incident report was placed in her file. A copy of the police incident report was not placed in the file of the other residents involved. Sumpter learned of the police report four days after the accusation was made. Plaintiff was reassigned to work at the Tuxedo Court housing community on September 3, 1997, in order to "preserve the integrity of the ongoing [sexual harassment] investigation."

Defendant completed its investigation of the sexual harassment charge sometime thereafter and notified the resident on October 7, 1997. Due to an administrative error, Plaintiff was notified on November 7, 1997. There was no finding that Plaintiff had sexually harassed the resident.

In October 7, 1997, Plaintiff was notified that he had failed to comply with Defendant's requirement of contacting residents regarding certain police reports, even after numerous opportunities. A few weeks later, Sumpter sent Plaintiff an in-depth memorandum detailing her concerns about his performance and the performance of his staff and asking Plaintiff to respond. On November 21, 1997, Jimmie Lacey sent Plaintiff formal notification that he was suspended for 20 days for the following violations of Defendant's policies:

[1]   taking retaliatory action against a resident who filed charges of unlawful discrimination;

[2]   insubordination; and

[3]   incompetency and inefficiency in the performance of your job duties.

Plaintiff appealed the decision and the suspension was reduced to 10 days. However, at the meeting on his appeal, Plaintiff admitted he had violated HABD policy but that "he did not understand the seriousness of his failure to respond to a directive from his immediate supervisor."

Plaintiff's job performance did not improve after his suspension and he continued to submit required paperwork in an untimely fashion. Also, in March 1998, Patton sought reimbursement for purchases he had made from the petty cash fund of his office. Defendant responded that such purchases with petty cash funds were improper and in violation of Defendant's purchasing procedures. Plaintiff's February performance evaluation rated his "overall performance" and "unsatisfactory," which placed Plaintiff on probation under a "performance improvement plan" as of March 10, 1998.

Plaintiff filed an EEOC charge on April 24, 1998, in which he alleged that he had

been subjected to discrimination on the basis of his sex and race with regard to assignments, evaluation, harassment, and suspension. Defendant's Executive Director, received notice of the charge on June 4, 1998; the EEOC sent the notice on May 26, 1998.

On or about April 28, 1998, Sumpter sent Lacey a memo regarding Plaintiff's improvement (or lack thereof). Sumpter indicated numerous areas in which Plaintiff's performance failed to comply with his "performance improvement plan," including failure to file timely responses and required reports, and failure to explain his improper use of the petty cash funds. Plaintiff was given an opportunity to respond to Sumpter assessment of his work performance. Lacey found Patton's responses unsatisfactory and decided to terminate Plaintiff.

On May 6, 1999, Lacey met with Patton and told him he was terminated. he also gave Plaintiff a seven-page memo detailing the basis for the his decision to terminate Plaintiff. Plaintiff appealed his termination, which was upheld. On appeal, HABD issued the following decision:

> Upon consideration of all the evidence presented by [Plaintiff] and by management, it is determined that the action of management terminating [Plaintiff]'s employment is affirmed on the basis of the policy violations stated in [Lacey]'s Notice of Termination. [Plaintiff] did not deny the performance problems alleged and offered no credible evidence that during the relevant evaluation period, he was actually performing his job. Although he stated that some of the problems were attributable to the eligibility specialist whom he supervised, he provided no explanation for not monitoring or supervising the work of the eligibility specialist to correct problems. There was ample evidence of oral and written notice to the employee of the performance problems raised by his supervisor. Even in the absence of issues of nonperformance or poor performance, **this employee's termination would be sustained on the basis of the appropriation of public housing funds for his personal use. . . . This use of funds is a serious violation of HABD policy, of Federal housing regulations, and raises questions under the Alabama State Ethics Law to which HABD employees may be subject**.

Doc. 20, Exh. 3, Exh. C (emphasis in original).

### III. DISCUSSION

#### A. DEFENDANT'S MOTION TO STRIKE AFFIDAVITS

Defendant has filed a Motion to Strike the affidavits of Emanuel Ford and Wilma Jean Cooper (Doc. 30), which were submitted by Plaintiff with his opposition to Defendant's Motion for Summary Judgment. The Court notes neither affidavit is signed; neither is notarized or made under penalty of perjury. Therefore, Defendant's Motion is due to be granted. *See* Fed. R. Civ. P. 56(e).

#### B. DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EVIDENTIARY SUBMISSION

Defendant asks this Court to strike Plaintiff's remaining evidentiary submission -- except for excerpts from his deposition and the affidavit of Patricia Sumpter that Defendant filed in support of its Motion. Defendant contends that these items "should be stricken because of [P]laintiff's failure to properly authenticate or lay any type of foundation for the introduction of these documents." (Doc. 30) Moreover, the documents constitute inadmissible hearsay and are not relevant to the Court's inquiry on summary judgment." (Doc. 30, p. 3). The Court notes that at least some of the numerous documents submitted by Plaintiff were part of Defendant's Initial Disclosures. Also, many -- if not all -- of the documents in Plaintiff's evidentiary submission appear to be documents that can be readily authenticated by Defendant or its representatives or other witnesses in this case. Defendant's Motion does not identify any particular document that it contends cannot be authenticated or to which a proper foundation cannot be laid. Therefore, the Court finds

that Defendant's Motion to Strike Plaintiff's Evidentiary Submission is due to be denied. *See Church of Scientology v. City of Clearwater,* 2 F.3d 1514, 1530 (11th Cir. 1993)(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 319, 324, 106 S. Ct. 2548, 2551, 2553, 91 L. Ed. 2d 265 (1986); *Offshore Aviation v. Transcom Lines, Inc.,* 831 F.2d 1013, 1015 & n.1 (11th Cir. 1987)).

### C. CONSIDERATION OF EVIDENCE SUBMITTED BY DEFENDANT IN SUPPORT OF ITS ARGUMENT IN REPLY

This Court will not consider any evidence submitted by Defendant in support of its argument in reply. (Doc. 31) Therefore, the Court notes that in deciding Defendant's Motion for Summary Judgment, it has not considered the affidavit of Patricia Sumpter, dated March 23, 2000, or the affidavit of Wilma Jean Cooper, dated March 21, 2000.

### D. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -- RACE & GENDER DISCRIMINATION CLAIMS

Defendant contends that Plaintiff cannot establish a prima facie case of discrimination based on either Plaintiff's gender or his race because he cannot establish that he was treated less favorably than similarly situated employees.

Plaintiff contends that he was treated less favorably than other similarly situated employees that are white or female with regard to discipline. Therefore, Plaintiff must establish the following prima facie case:

> (1) that the plaintiff belongs to a class protected under Title VII; (2) that the plaintiff was qualified for the job; and (3) that the misconduct for which the employer discharged [or otherwise disciplined] the plaintiff was the same or similar to what a similarly situated employee engaged in, but the employer did not discipline the other employee similarly.

*Lathem v. Department of Children & Youth Services*, 172 F.3d 786, 792 (11th Cir. 1999).[2] Defendant contends that Plaintiff cannot establish that he was treated differently than similarly situated employees.

The two most important factors to consider in determining whether two employees are similarly situated, but treated differently are (1) the nature of the offenses committed, and (2) the punishment imposed. *Id.* at 793. The Eleventh Circuit has held that, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).

The record contains no evidence from which the Court can determine that those persons identified by Plaintiff as being treated more favorably with regard to work rule violations actually committed the same or similar work rule violations or that they had similar work records. Therefore, the Court finds that Plaintiff has failed to show a prima facie case of discrimination based on disparate discipline. Defendant's Motion for Summary judgment is due to be granted on said claim.

Because the Court finds that Plaintiff has failed to establish a prima facie case of discrimination, determination of the other grounds raised by Defendant in its motion for

---

[2]The Court notes that a plaintiff may also establish a prima facie case by showing that he was replaced by someone outside the protected class or "by showing that he was suspended or fired while others not in the plaintiff's protected class, 'having comparable or lesser qualifications', were retained." *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984)(quoting *Whiting v. Jacksonville State University*, 616 F.2d 116, 121 (5th Cir. 1980)). Plaintiff is proceeding under the prima facie case set forth above. *See* Doc. 1, ¶¶ 13, 18, 24.

summary judgment on Plaintiff's race and gender discrimination claims is pretermitted.[3]

The Court finds that Plaintiff has failed to present substantial evidence of a disputed issue of material fact and that Defendant is entitled to judgment as a matter of law on Plaintiff's discrimination claims. Defendant's Motion for Summary Judgment is due to be granted and Plaintiff's discrimination claims are due to be dismissed.

### E.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -- RETALIATION CLAIM

Defendant contends that Plaintiff cannot establish a prima facie case of retaliation in violation of Title VII.

Section 2000e-3 provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation, Plaintiff must establish: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). Defendant concedes that Plaintiff suffered an adverse employment action – termination. However, Defendant

---

[3]The Court notes that Defendant contends that it is entitled to Summary Judgment on Plaintiff's discrimination claim alleging discrimination based on HABD's failure to notify him of the outcome of its investigation into the charge of sexual harassment against Mr. Patton. The Court finds that this claim is not in Plaintiff's complaint and the failure to "notify" Mr. Patton was not an adverse action.

contends that, except for the filing of an EEOC charge, Plaintiff cannot establish that he engaged in protected activity. And, with regard to the EEOC charge, Defendant contends that Plaintiff cannot establish a causal link between the filing of his EEOC charge and his termination.

### 1. Protected Activity

Plaintiff's Complaint alleges two types of protected activity: (1) protesting charges of sexual harassment lodged against him and (2) filing a charge of discrimination with the EEOC.[4] In his Complaint, he alleges: "[D]efendant intentionally and wrongfully discharged [P]laintiff in retaliation for his prior complaints protesting all allegations of sexual harassment against him. On April 24, [P]laintiff filed a charge of discrimination against defendant on the basis of race and gender. Fourteen days later, he was discharged. " Complaint, ¶ 29. Defendant concedes that the filing of an EEOC charge is protected activity. However, it contends that the protesting of the allegations of sexual harassment made against Plaintiff is not protected activity.

Plaintiff complains that he was discharged in retaliation for his protests in the face of charges that he had sexually harassed a tenant. Although perhaps actionable under another federal law, the tenant's complaints of sexual harassment are not Title VII claims. As Title VII only prohibits retaliation on the basis of opposition to discrimination under Title VII or participation in an investigation, proceeding, or hearing pursuant to Title VII, Mr.

---

[4]Defendant contends that Plaintiff alleges two other protected activities: "being accused of sex harassment by a HABD resident," and "calling the police on [the] tenant [who had accused him of sex harassment]." Def. Brief, p. 16. The Court finds that these allegations of protected activity, which Plaintiff asserted in his deposition, are subsumed by the Court's discussion regarding Plaintiff's allegations that he protested charges of sexual harassment.

Patton's protests of charges of sexual harassment, brought against him by a tenant -- not an employee of HABD, are not "protected activity" for purposes of a Title VII retaliation claim.

### 2. Causal Link

Defendant contends that Plaintiff cannot establish a causal link between the filing of an EEOC charge, which Defendant concedes is an activity protected by Title VII, and Plaintiff's termination.

> In order to prevail on a retaliation claim, a plaintiff must establish the requisite causal connection between her statutorily protected conduct and the adverse employment action. See Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir.1993). To establish that causal connection, a plaintiff need only show "that the protected activity and the adverse action were not wholly unrelated." Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir.1985). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence." Goldsmith, 996 F.2d at 1163 (internal citations omitted).

Clover v. Total System Services, 176 F.3d 1346, 1354 (11th Cir. 1999).

Defendant has presented evidence to show that no one involved in the decision to terminate Plaintiff was aware that he had filed an EEOC charge. Plaintiff has not presented any evidence to dispute this showing. Therefore, Plaintiff has failed to establish a prima facie case of retaliation based on his filing of an EEOC charge.

Because the Court finds that Plaintiff has failed to establish a prima facie case of retaliation, determination of the other grounds raised by Defendant in its motion for summary judgment on Plaintiff's retaliation claim is pretermitted.

The Court finds that Plaintiff has failed to present substantial evidence of a disputed issue of material fact and that Defendant is entitled to judgment as a matter of law on

Plaintiff's retaliation claim. Defendant's Motion for Summary Judgment is due to be granted and Plaintiff's retaliation claim is due to be dismissed.

## CONCLUSION

Based on the foregoing, the Court finds that there are no disputed issues of material fact and that Defendant is entitled to judgment as a matter of law. Therefore, Defendant's Motion for Summary Judgment (Doc. 19) is due to be granted and Plaintiff's claims are due to be dismissed. Defendant's Motion to Strike (Doc. 31) is due to be granted in part and denied in part. The affidavits of Wilma Jean Cooper and Emanuel B. Ford are due to be struck from the record; the remainder of Defendant's Motion to strike is due to be denied.

The Court will enter an Order contemporaneous herewith in conformity with this Memorandum Opinion.

DONE this 31st day of March, 2000.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE